AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

United States of America )
v. )
) Case No.
Daniel Simmons )
)
_____ )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) _listed in the Affidavit in Support of Complaint_ in the county of _____Hamilton and Butler_____ in the
_____Southern_____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 and 841(a)(1) and (b)(1)(A) | Conspiracy to Possess with Intent to Distribute and to Distribute a Controlled Substance. |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Charles W. Whitford, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/24/19__

_____
*Judge's signature*

City and state: _____Cincinnati, Ohio_____

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Charles W. Whitford, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby state:

## INTRODUCTION

1. I am a Police Officer, and have been employed so since May 2000. I was employed by the City of Norwood Police Department until November 2017. From November 2017 to the present, I have been employed by the Village of Golf Manor Police Department, located in Hamilton County, Ohio. I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), and have been so for over nine years. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During my time as a Task Force Officer with the DEA, I have participated in numerous investigations involving narcotics trafficking. I have received specialized training in the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, transportation, distribution and importation of controlled substances, as well as methods used to finance drug transactions. The information set forth in this affidavit comes from my personal involvement in this investigation, as well as information provided to me by other law enforcement officers.

2. Since August 2018, agents with the DEA Cincinnati Resident Office and other law enforcement agencies have been investigating a large-scale cocaine, heroin, fentanyl and methamphetamine Drug Trafficking Organization (DTO) operating between Cincinnati, OH; Milwaukee, WI; Chicago, IL; and Mexico. The DTO is believed to have smuggled cocaine, heroin,

1

fentanyl and methamphetamine into the United States for distribution in several cities including Cincinnati, OH.

3. During the course of the investigation, agents utilized numerous law enforcement techniques including the use of confidential sources; traffic stops; search warrants; trash searches; court orders authorizing the application and monitoring of global positioning systems (GPS); court orders authorizing geographic location on cellular telephones utilized by members of the DTO; covert video surveillance; as well as physical and electronic surveillance. Agents also obtained numerous court-authorized wire intercepts of electronic communications and electronic data sent to and from cellular devices used by Derrick BRYANT, Maurice JACKSON, and Jesus BOJORQUEZ.

4. During the course of the investigation, law enforcement has conducted thousands of hours of surveillance, corroborated by intercepted telephone calls and electronic messages, in which the following individuals have been identified as conspiring to distribute and to possess with the intent to distribute more than five kilograms of cocaine and 400 grams of fentanyl, and have in fact been observed in numerous suspected drug transactions, as well as the laundering of the drug proceeds: **Derrick BRYANT; Maurice JACKSON; Daniel SIMMONS; William GRAHAM; Lashone ISOM; Jesus BOJORQUEZ, a/k/a Jose Daniel ZAZUETA-Hernandez (hereinafter referred to as "BOJORQUEZ"); Carlos FLORES-INZUNZA (FLORES); and Jose TOQUILLAS-FELIX (TOQUILLAS).**

5. During the course of the investigation, law enforcement identified the following residences involved with the DTO:

    a. 9812 Beech Drive, Cincinnati, Ohio, 45231 (hereinafter **SUBJECT PROPERTY A1**). This is the home of BRYANT.

2

b. 3448 Sunbury Lane, Cincinnati, Ohio, 45251 (hereinafter **SUBJECT PROPERTY A2**). This is the home of Lashone ISOM.

c. 12010 Chardon Lane, Cincinnati, Ohio, 45246 (hereinafter **SUBJECT PROPERTY A3**). This is the home of Maurice JACKSON.

d. 5617 Prosser Avenue, Cincinnati, Ohio, 45216 (hereinafter **SUBJECT PROPERTY A4**). This is a residence used by BOJORQUEZ, FLORES and TOQUILLA.

e. 3059 Glenmore Ave # 3, Cincinnati, Ohio, 45238 (hereinafter **SUBJECT PROPERTY A5**). This is the home of William F. GRAHAM.

f. 404 Belle Avenue, Hamilton, Ohio, 45011 (hereinafter **SUBJECT PROPERTY A6**). This home of Daniel SIMMONS.

g. 8340 Landmark Court #205, West Chester, Ohio, 45069 (**hereinafter SUBJECT PROPERTY A7**). This is the current home of Carlos FLORES-INZUNZA.

## PROBABLE CAUSE

6. In August 2018, law enforcement interviewed a DEA Confidential Source, (hereinafter referred to as CS1). CS1 has proven reliable and agreed to cooperate with members of the DEA for monetary compensation. During the interview, CS1 stated that BRYANT has purchased high-end vehicles over the past few years from Dixie Imports located at 4597 Dixie Highway, Fairfield, Ohio. Several vehicles purchased by BRYANT have been cash purchases, and at least one vehicle was purchased by BRYANT but placed in another individual's name. CS1 believes BRYANT is laundering the proceeds from the sales of illegal narcotics through Dixie Imports, Inc. by purchasing expensive vehicles. CS1 provided agents with a cellular telephone number utilized by BRYANT. Law enforcement indices revealed that BRYANT has eight (8) prior felony arrests,

seven (7) of which are for drug offenses.

7.   Subsequent investigation revealed that BRYANT is the owner of Prime Cuts Barber and Beauty Salon located at 11922 Hamilton Avenue, Cincinnati, Ohio.  Agents also identified BRYANT's residence as 9812 Beech Drive, Cincinnati, Ohio, **SUBJECT PROPERTY A1**.

8.   On October 11, 2018, based on information developed during the investigation, agents installed a court–authorized GPS tracker on BRYANT's GMC truck bearing Ohio registration 519YTA. That tracker has been re-authorized by a Magistrate Judge in the Southern District of Ohio over the course of this investigation. The tracker has revealed that BRYANT routinely parks this vehicle at **SUBJECT PROPERTY A1**, and physical surveillance has confirmed that BRYANT has utilized this vehicle in furtherance of a drug trafficking conspiracy.

9.   During the course of the investigation of BRYANT, agents identified Lashone ISOM as a suspected dealer supplied by BRYANT.  On December 14, 2018, at approximately 4:10 a.m., DEA agents conducted a trash pull at ISOM's residence located at 3448 Sunbury Lane, Cincinnati, Ohio, **SUBJECT PROPERTY A2**.  During the trash pull, agents seized multiple clear plastic sandwich baggies that had the corners cut off, receipts with ISOM's name and phone number of 513-763-9307. The baggies were submitted to the Hamilton County Coroner's lab for testing which results were positive for the presence of THC, Cocaine, Heroin, Acetyl Fentanyl and Fentanyl.  The lab was conducted under Hamilton County Coroner's lab # CL-18-13840.

10. On December 18, 2018, agents installed a court–authorized GPS tracker on ISOM's GMC truck bearing Ohio registration HPU6856.  That tracker has been re-authorized by a Magistrate Judge in the Southern District of Ohio over the course of this investigation and it has revealed that ISOM routinely parks this vehicle in a common parking lot of **SUBJECT PROPERTY A2**, and physical surveillance has confirmed that ISOM has utilized this vehicle in furtherance of a drug

trafficking conspiracy.

11. On February 15, 2019, at approximately 3:05 a.m., agents again conducted a trash pull at ISOM's residence, **SUBJECT PROPERTY A2**. From the trash, agents recovered multiple clear plastic sandwich baggies that had white residue on the inside of the baggies, as well as documentation in ISOM's name. The baggies were submitted to the Hamilton County Coroner's lab for testing which results were positive for the presence of heroin, acetyl fentanyl, fentanyl, cocaine, and tramadol (.0255 grams). This lab test was submitted under CL19-01451.

12. On February 20, 2019, at approximately 5:46 p.m., it was noted, through court-authorized electronic surveillance, that BRYANT's GMC truck departed **SUBJECT PROPERTY A1**. At approximately 6:05 p.m., BRYANT's truck arrived at the Hooter's restaurant located at 12185 Springfield Pike, Springdale, Ohio. At approximately 6:40 p.m., law enforcement arrived at the restaurant and observed BRYANT's truck parked in the lot. At approximately 7:30 p.m., law enforcement observed BRYANT walk to and enter the truck. The second subject, later identified as Maurice JACKSON, was observed walking away from BRYANT's truck and approaching a 2011 black Lincoln four door sedan which he entered, taking the driver's seat. JACKSON was followed to his (JACKSON's) residence located at 12010 Chardon Lane, Cincinnati, Ohio, **SUBJECT PROPERTY A3**.

13. On February 22, 2019, at approximately 3:00 a.m., law enforcement conducted a trash search at JACKSON's residence, **SUBJECT PROPERTY A3**. Agents subsequently retrieved trash bags that were abandoned at the curb for collection and located packaging materials in the shape of a kilogram and a document. On that same day, the packaging materials were submitted to the Hamilton County Coroners Lab and the packaging materials tested positive for the presence of cocaine (CL# 19-1681).

14. On February 28, 2019, Agents installed a court–authorized GPS tracker on JACKSON's Lincoln sedan. That tracker has been re-authorized by a Magistrate Judge in the Southern District of Ohio over the course of this investigation. The tracker has revealed that JACKSON routinely parks this vehicle at **SUBJECT PROPERTY A3** and physical surveillance has confirmed that JACKSON has utilized this vehicle in furtherance of a drug trafficking conspiracy.

15. On March 6, 2018, the Honorable Michael R. Barrett, United States District Judge in the Southern District of Ohio, signed an order under case 1:19MC005 authorizing the interception of wire communications over telephone number 513-704-9414 (TC1), used by BRYANT. On March 7, 2018, law enforcement initiated the interception of wire communications as authorized by the order.

16. On April 2, 2019, at approximately 10:12 a.m., based on the court-authorized electronic surveillance on BRYANT's 2017 GMC truck, agents observed the truck had traveled to the area of 5617 Prosser Avenue, Cincinnati, Ohio, **SUBJECT PROPERTY A4**. Based on subsequent surveillance of this location as well as wire intercepts, agents have identified **SUBJECT PROPERTY A4** as a stash house used by BRYANT's source of supply, Jesus BOJORQUEZ. Based further on surveillance and court-authorized wire intercepts, agents have learned that BOJORQUEZ has directed FLORES and TOQUILLAS to oversee the storage of large shipments of cocaine and heroin/fentanyl in **SUBJECT PROPERTY A4**.

17. On April 4, 2019, the Honorable Karen L. Litkovitz, United States Magistrate Judge in the Southern District of Ohio, signed an order authorizing the installation and use of a pen register and trap and trace device for 60 days for telephone number 312-533-7171 used by BOJORQUEZ. During the monitoring of the pen register, case agents noted multiple contacts with cellular telephone 513-466-4711.

6

18. On April 5, 2019, at approximately 4:05 a.m., law enforcement conducted a trash search at JACKSON's residence, **SUBJECT PROPERTY A3**. During the search, agents seized plastic bags containing a white residue and packaging materials. Those items were subsequently submitted to the Hamilton County Coroner's Lab for further testing under CL#19-03182, and tested positive for the presence of cocaine.

19. On April 17, 2019, the Honorable Michael R. Barrett, United States District Judge in the Southern District of Ohio, signed an order under case 1:19MC0010 authorizing the interception of wire and electronic communications over telephone numbers 513-888-1685 (TC2) and 859-368-1537 (TC3), both identified as being used by BRYANT.

20. On April 17, 2019, at approximately 5:32 p.m., agents intercepted a text message from Maurice JACKSON to BRYANT that read, "Can only go 1x, if u can still knock the 5 off." Based on information gathered throughout this investigation, and my belief that BRYANT is a cocaine source of supply for JACKSON, I believe that JACKSON asked BRYANT for one kilogram of cocaine with a $500 discount off the price. At approximately 6:40 p.m. BRYANT's 2017 black GMC departed **SUBJECT PROPERTY A1**, arriving a short time later in the area of 11700 Princeton Pike, Cincinnati, Ohio. At approximately 7:00 p.m., law enforcement observed BRYANT's 2017 GMC parked behind the Starbucks coffee shop, which is a location at which BRYANT will meet customers, and more specifically, JACKSON. BRYANT remained there briefly then departed, traveling to the area where his minor child resides, and then traveling directly to his residence, **SUBJECT PROPERTY A1**. Law enforcement was unable to see BRYANT meet JACKSON.

21. On April 19, 2019, case agents conducted a trash search at JACKSON's residence, **SUBJECT PROPERTY A3**. During the search, agents seized plastic bags containing a white

residue and packaging materials consistent with the size of a kilogram of narcotics which were submitted to the Hamilton County Coroner's Lab which resulted in a positive test for cocaine. On May 6, 2019, I learned that the aforementioned evidence tested positive for the presence of cocaine. Based on the intercepted text message on April 17, 2019, between BRYANT and JACKSON, electronic and covert video surveillance, and the trash search conducted at JACKSON's residence, I believe that BRYANT met with JACKSON behind the Starbucks coffee shop and distributed one kilogram of cocaine to JACKSON. After the drug transaction, I believe BRYANT transported the drug proceeds to his residence, **SUBJECT PROPERTY A1**. Lastly, I believe that JACKSON transported the kilogram of cocaine to **SUBJECT PROPERTY A3** for further processing, after which he discarded the kilogram wrapper into the trash which was recovered by agents on April 19, 2019.

22. On April 22, 2019, the Honorable Karen L. Litkovitz, U.S. Magistrate Judge, Southern District of Ohio, authorized a search warrant for the real-time/GPS location tracking of cellular telephone 513-466-4711, used by FLORES. At approximately 3:38 p.m., a real-time/GPS location ping was received which placed the cellular telephone at the Home Depot, located at 3400 Highland Ave, Cincinnati, Ohio. At approximately 4:00 p.m., law enforcement observed FLORES and TOQUILLAS exit the Home Depot and enter a gold Toyota Camry bearing Ohio registration HSS7203. A license query on the registration showed that the listed address for the registered owner was 116 Linden Street, Cincinnati, Ohio. This is the same listed address for the subscriber of cellular telephone number 513-466-4711. Surveillance was maintained on the Camry as it traveled to **SUBJECT PROPERTY A4**.

23. On April 29, 2019, agents intercepted a text message conversation between BRYANT and JACKSON. During the conversation, BRYANT asked JACKSON if he was ready to purchase a

kilogram of cocaine. At approximately 3:58 p.m., based on the court-authorized GPS tracker on JACKSON's sedan, it arrived at JACKSON's residence, **SUBJECT PROPERTY A3**. At approximately 4:14 p.m., law enforcement observed JACKSON exit **SUBJECT PROPERTY A3** carrying a black backpack. (This information corroborates information previously received by law enforcement that JACKSON utilizes a black bag to conceal controlled substances and/or drug proceeds.) Moments later, law enforcement observed JACKSON enter his Lincoln sedan and depart the area. At approximately 4:24 p.m., law enforcement observed JACKSON park his vehicle behind the Starbucks located at 11700 Princeton Pike, Springdale, Ohio. At approximately 4:35 p.m., based on the court-authorized GPS tracker on BRYANT's truck, the truck departed **SUBJECT PROPERTY A1**. At approximately 4:38 p.m., agents intercepted a call from BRYANT, using TC2, to William GRAHAM, using 513-546-2460. During the course of the call, BRYANT informed GRAHAM that he (BRYANT) attempted to FaceTime GRAHAM. GRAHAM subsequently stated that he would call BRYANT right back. At approximately 4:41 p.m., agents intercepted a call between BRYANT and JACKSON. During the course of this call, BRYANT asked JACKSON, "You got my, you right there with my guy, my guy right there with ya?" to which JACKSON replied, "Yes sir, right here with your guy my brother". At approximately 4:46 p.m., law enforcement observed a Chevrolet pick-up truck bearing Ohio license plate GMY5627 arrive to the area and park next to JACKSON. (Ohio license plates GMY5627 are registered to William F. GRAHAM III at **SUBJECT PROPERTY A4**). Moments later, law enforcement observed JACKSON exit his vehicle and approach GRAHAM in the Chevrolet truck. During the approximate time of this meeting, agents intercepted the above referenced call between BRYANT and JACKSON. Upon the completion of what appeared to be a transaction between GRAHAM and JACKSON, surveillance was maintained on GRAHAM. At

approximately 5:29 p.m., GRAHAM arrived at BRYANT's residence, **SUBJECT PROPERTY A1**. At approximately 5:34 p.m., I observed BRYANT arrive at **SUBJECT PROPERTY A1** and meet GRAHAM in the driveway. At approximately 6:18 p.m., GRAHAM departed **SUBJECT PROPERTY A1** and traveled to **SUBJECT PROPERTY A4**. At approximately 6:35 p.m., law enforcement observed GRAHAM meeting with FLORES and TOQUILLAS in the rear driveway of **SUBJECT PROPERTY A4**. Based on the above events, I believe BRYANT directed GRAHAM to complete a drug transaction with JACKSON. Furthermore, I believe JACKSON traveling directly from **SUBJECT PROPERTY A3** to the location of the suspected drug transaction indicates that JACKSON stores his drug proceeds at **SUBJECT PROPERTY A3**. After the transaction, I believe GRAHAM then took the drug proceeds to BRYANT's residence **SUBJECT PROPERTY A1** where I believe it was counted along with BRYANT. Lastly, I believe GRAHAM transported the drug proceeds back to the stash residence at **SUBJECT PROPERTY A4**.

24. On May 2, 2019, the Honorable, Stephanie K. Bowman, U.S. Magistrate Judge, Southern District of Ohio, entered an order authorizing the installation and monitoring of a GPS tracking device for a 2011 Chevrolet Truck for 45 days driven by GRAHAM. That tracker has been re-authorized by a Magistrate Judge in the Southern District of Ohio over the course of this investigation. The tracker has revealed that GRAHAM routinely parks this vehicle at GRAHAM's residence, 3059 Glenmore Avenue, #3, Cincinnati, Ohio, **SUBJECT PROPERTY A5**, and physical surveillance has confirmed that GRAHAM has utilized this vehicle in furtherance of a drug trafficking conspiracy.

25. On May 16, 2019, the Honorable Michael R. Barrett, United States District Judge in the Southern District of Ohio, signed an order under case 1:19MC0010 authorizing the continued

interception of wire and electronic communications over telephone number 513-888-1685 (TC2) and 859-368-1537 (TC3) utilized by BRYANT, and the initial interception of 513-609-9638 (TC4), utilized by JACKSON.

26. On May 21, 2019, at approximately 6:51 p.m., through court-authorized electronic surveillance, law enforcement learned that GRAHAM's Chevrolet truck departed his residence, **SUBJECT PROPERTY A5**. Law enforcement then noted that at approximately 7:08 p.m., ISOM's GMC truck was parked in front of the IHOP restaurant located at 9540 Colerain Avenue, Cincinnati, Ohio. Previous surveillance conducted on members of the DTO has revealed this location as a meeting point for ISOM and GRAHAM.

27. At approximately 7:32 p.m., law enforcement observed ISOM parked at the IHOP restaurant. At the same time, law enforcement observed GRAHAM arrive and park adjacent to ISOM. Law enforcement observed GRAHAM, inside his truck, reach behind the seat for a bag, utilizing two hands to retrieve it. Agents then observed GRAHAM hand the bag out the window to ISOM. The bag was described as a plastic bag, similar to the size and type acquired from a store, when purchasing shoes. At approximately 7:33 p.m., both ISOM and GRAHAM departed the parking lot and traveled to the area of ISOM's residence, **SUBJECT PROPERTY A2**.

28. At approximately 7:34 p.m., a call from BRYANT to GRAHAM was intercepted. During the intercepted call, GRAHAM answered the phone and said "yeah." BRYANT said to GRAHAM, "Hey go ahead inside he he gonna take a minute." GRAHAM replied, "Oh I'm cool sittin out here." BRYANT responded by saying, "He probabaly don't want you sitting out there," to which GRAHAM said, "I'll go in". BRYANT then said, "Mother fuckin neighbors, alright." GRAHAM replied "alright" and BRYANT closed the conversation with "alright." I believe that ISOM went into **SUBJECT PROPERTY A2** to count U.S. currency in order to

11

provide it to GRAHAM for the controlled substances distributed to him (ISOM).

29. At approximately 7:51 p.m., law enforcement observed ISOM and GRAHAM walk away from **SUBJECT PROPERTY A2** toward and enter their respective vehicles. ISOM relocated his GMC truck to the common parking area. GRAHAM traveled to a gas station and then toward BRYANT's residence.

30. At approximately 8:13 p.m., a call between BRYANT and GRAHAM was intercepted. During the call, GRAHAM indicated that he was approaching **SUBJECT PROPERTY A1**. At approximately 8:20 p.m., the GPS showed GRAHAM parked at **SUBJECT PROPERTY A1**. At approximately 9:51 p.m., GRAHAM departed **SUBJECT PROPERTY A1** and traveled directly to **SUBJECT PROPERTY A4**. GRAHAM remained at that location for approximately two minutes and then returned to his (GRAHAM's) residence, **SUBJECT PROPERTY A5**.

31. On May 28, 2019, agents conducted surveillance of a meet between GRAHAM, BRYANT, and JACKSON at Tri County Mall, 11700 Princeton Pike, Cincinnati, Ohio. Surveillance was in response to the monitoring of electronic surveillance and intercepted phone communications between JACKSON, BRYANT, GRAHAM, and BOJORQUEZ. During the course of intercepted conversations, a customer of JACKSON's requested suspected narcotics. Agents intercepted a text message from JACKSON to BRYANT asking, "All good?" A text message was then intercepted from BRYANT to BOJORQUEZ stating, "I am still waiting on some money for the last one, but I'm going to send my friend over to pick one tool up that I need right now."

32. At approximately 3:09 p.m., court-authorized electronic surveillance on GRAHAM's Chevrolet truck showed it departed **SUBJECT PROPERTY A5**. At approximately 4:27 p.m., the GPS tracker on GRAHAM's truck showed that it arrived at **SUBJECT PROPERTY A4**. At

approximately 4:33 p.m., GRAHAM departed **SUBJECT PROPERTY A4** and traveled toward Tri County Mall, 11700 Princeton Pike, Springdale, Ohio. At approximately 4:50 p.m., court-authorized electronic surveillance on BRYANT's GMC truck showed it departed **SUBJECT PROPERTY A1**. At approximately 4:51 p.m., court-authorized electronic surveillance on JACKSON's Lincoln sedan showed it departed **SUBJECT PROPERTY A3**. At approximately 4:55 p.m., GRAHAM arrived to Tri County Mall. GRAHAM parked in the parking lot close to the Ethan Allen Store. At approximately 5:01 p.m., law enforcement observed JACKSON arrive in the parking lot behind the Starbucks at 11700 Princeton Pike, Springdale, Ohio, where JACKSON parked. At approximately 5:02 p.m., law enforcement observed BRYANT arrive and meet with GRAHAM near the Ethan Allen Store. GRAHAM handed a black backpack to BRYANT who then drove to JACKSON's location. Once with JACKSON, BRYANT handed JACKSON the black backpack.

33. At approximately 5:21 p.m., law enforcement observed BRYANT and JACKSON depart the area. At approximately 5:40 p.m., BRYANT called JACKSON and asked if he (JACKSON) was "All good?" to which JACKSON replied, "All is well." At approximately 5:49 p.m., law enforcement observed JACKSON arrive at 404 Belle Avenue, Hamilton, Ohio, **SUBJECT PROPERTY A6**. This is the residence of Daniel SIMMONS's, aka "Rico," a known member of the DTO. At approximately 5:51 p.m., surveillance observed JACKSON walk with the backpack into SIMMON's residence, **SUBJECT PROPERTY A6**. I know, from intercepted calls and text messages between JACKSON and SIMMONS, that **SUBJECT PROPERTY A6**, is a residence utilized by JACKSON and SIMMONS to process cocaine for further distribution. Throughout the course of this investigation, **SUBJECT PROPERTY A6** has been used by JACKSON and SIMMONS to store and distribute cocaine.

34. On May 30, 2019, at approximately 4:56 p.m., agents intercepted a text message from JACKSON to BRYANT stating, "Back at you tomorrow." At approximately 6:18 p.m., BRYANT responded to JACKSON, "Ok."

35. On May 31, 2019, at approximately 2:46 p.m., agents intercepted a text message conversation between JACKSON and BRYANT. During this conversation, BRYANT and JACKSON coordinated a suspected drug transaction at 5:00 p.m., that same day. At approximately 3:39 p.m., agents intercepted communications from BRYANT to the source of supply stating, "I should be able to pay for that last one today or tomorrow. I need one now so I am sending my friend to get one". At approximately 3:52 p.m., the court-authorized electronic GPS on JACKSON's Lincoln showed the vehicle was at his residence, **SUBJECT PROPERTY A3**.

36. At approximately 4:11 p.m., the covert, pole-mounted camera located at **SUBJECT PROPERTY A4**, showed a silver Nissan Maxima arrive at the residence and back into the driveway driven by GRAHAM. At approximately 4:15 p.m., GRAHAM departed **SUBJECT PROPERTY A4**.

37. At approximately 4:45 p.m., JACKSON departed **SUBJECT PROPERTY A3**. At approximately 4:46 p.m., surveillance observed GRAHAM arrive in the Nissan Maxima bearing Ohio temporary license J021477 and park near the Sears building at Tri-County Mall. A check of the registration revealed the vehicle is registered GRAHAM, with a listed address of **SUBJECT PROPERTY A4**. At approximately 4:53 p.m., law enforcement, law enforcement observed BRYANT arrive in his 2015 Mercedes Benz bearing Ohio temporary registration J021560 and park next to GRAHAM. At approximately 4:56 p.m., JACKSON arrived and parked behind the Starbucks coffee shop at 11700 Princeton Pike, Springdale, Ohio. At approximately 4:57 p.m., surveillance observed BRYANT leave GRAHAM and park next to JACKSON. JACKSON

14

provided BRYANT a black bag and BRYANT provided a black item to JACKSON. Based on my training, experience, and observation, I believe the object resembled the shape of a kilogram of cocaine. At approximately 4:58 p.m., BRYANT and JACKSON departed the area.

38. On June 7, 2019, at approximately 3:13 a.m., law enforcement conducted a trash search at JACKSON's residence, **SUBJECT PROPERTY A3**. During the search, agents seized plastic bags and packaging materials, consistent with packaging material for a kilogram of cocaine. The packaging was submitted to the Hamilton County Coroners Lab for testing which resulted positive for the presence of cocaine.

39. On September 19, 2019, agents intercepted a series of text messages between BOJORQUEZ and Mike LNU regarding a potential drug money pick-up to occur between an unidentified courier, FLORES and TOQUILLAS on September 20, 2019. During the text messages, BOJORQUEZ provided Mike LNU the address of "8340 landmark ct united 205 west chester Ohio 45069," **SUBJECT PROPERTY A7**, as an address for the pick-up. Based on prior surveillances, agents are aware that FLORES lives with his girlfriend in this apartment.

40. At approximately 1:35 p.m., agents intercepted an incoming text message from Mike LNU to BOJORQUEZ that read "5909 muhlhauser rd west chester township." At approximately 1:35 p.m., agents intercepted an incoming text message from Mike LNU to BOJORQUEZ that read "Tomorrow 3:00." At approximately 1:38 p.m., agents intercepted an outgoing text message from BOJORQUEZ to Mike LNU that read "Okay." At approximately 2:34 p.m., Agents intercepted an outgoing text message from BOJORQUEZ to Mike LNU that read "Yes thanks."

41. At approximately 1:45 p.m., agents initiated surveillance in the area of 5909 Muhlhauser Road, West Chester Township, Ohio. This address is a Wendy's restaurant. Surveillance was also initiated at **SUBJECT PROPERTY A7**. At approximately 2:51 p.m., agents intercepted an

outgoing call from an unidentified female (UF) utilizing BOJORQUEZ's cellular telephone to Mike LNU. During this call, BOJORQUEZ informed Mike LNU through the UF (who was translating from Spanish to English) that "the guy is going to be there in ten minutes". Mike acknowledged "10 minutes." The UF stated "in a black Toyota". Mike acknowledged. Agents were aware Maribel Santiago, the girlfriend of FLORES, operates a black 2017 Toyota bearing Ohio registration HHJ4337. This information was provided to agents conducting surveillance at the Wendy's restaurant.

42. At approximately 3:06 p.m., surveillance observed the black 2017 Toyota bearing Ohio registration HHJ4337 driving through the parking lot of Wendy's restaurant and parking at the Monroe auto shop next door. At approximately 3:10 p.m., agents intercepted a call from during which Mike LNU told BOJORQUEZ through the UF, "a white Toyota SUV."

43. At approximately 3:11 p.m., agents intercepted and outgoing call from BOJORQUEZ to 513-832-9477, this cellular number has previously been identified as FLORES' cellular telephone number. During the call, BOJORQUEZ told FLORES the guy is at Wendy's.

44. At approximately 3:15 p.m., surveillance observed a white Toyota Rav4 arrive in the Wendy's lot bearing IL registration BP37248. At approximately 3:18 p.m., the black 2017 Toyota relocated from Monroe auto shop to the Wendy's restaurant. At approximately 3:20 p.m., surveillance observed FLORES handing a dark colored bag to the female operating the white Toyota Rav4. At approximately 3:22 p.m., the black 2017 Toyota departed the parking lot.

45. Surveillance followed the female onto Interstate 75 North until she was stopped by a Ohio State Highway Patrol Trooper for a traffic violation. A narcotics detection canine conducted an exterior sniff of the vehicle which resulted in a positive indication. A search of the vehicle resulted in the seizure of $79,980 in US currency.

46. During the course of the investigation, FLORES has been observed leaving **SUBJECT PROPERTY A7** in the morning and driving to **SUBJECT PROPERTY A4** for the day, only to return back to **SUBJECT PROPERTY A7** for the night.

47. On October 21, 2019, pursuant to the court-authorized wire intercept of (513) 568-7389, used by JACKSON, SIMMONS contacted JACKSON. During the call, which is summarized, SIMMONS stated that his cousin was there about to take the last "two" (ounces of cocaine) but he wants more than that, so he is going to leave the bread (money) here and when you get here, I'll just call him to come pick it up or I can run it to him. Later in the evening, surveillance followed JACKSON to **SUBJECT PROPERTY A6**. JACKSON was at the residence for one minute, then departed.

48. On October 22, 2019, pursuant to the court-authorized wire intercept of (414) 488-5466, used by BOJORQUEZ, BOJORQUEZ contacted BRYANT with the assistance of a UF translating Spanish to English. During the call, which is summarized, BRYANT said we should take a break because too many friends are in trouble. BRYANT stated after the "17" (kilograms of cocaine) because they are too many. BRYANT said five here and there is okay, but no 10 or 15 because he doesn't have enough people to move them. BRYANT said he wanted to keep the five he had and someone else has to take the 17. BOJORQUEZ stated he has another guy working in Ohio, in Columbus. BRYANT says not to come to Cincinnati or anywhere nearby. BRYANT stated everyone is getting busted around here and everybody is snitching on everybody.

49. On October 22, 2019, pursuant to the court-authorized wire intercept of (513) 568-7328, used by BRYANT, BRYANT called GRAHAM. During the conversation which is summarized, BRYANT stated God damn don't do that bullshit. GRAHAM asked what was happening. BRYANT stated I just worried mother fuckers out here drop. I hit you from a new number did

17

you see that? GRAHAM answered yes. The call then terminated.

50. Based on the two calls above, I believe that BRYANT is nervous that distributors close to him have been arrested and are cooperating and he and BOJORQUEZ are going to move their cocaine load from **SUBJECT PROPERTY A4.**

51. On October 23, 2019, the Honorable Karen L. Litkovitz, U.S. Magistrate Judge, Southern District of Ohio, authorized search warrants for SUBJECT PROPERTIES A1-A7. During the warrants, the following occurred:

52. At **SUBJECT PROPERTY A1**, BRYANT was arrested while departing the residence. Through the court-authorized wire intercepts, agents learned earlier in the morning BRYANT had delivered a large amount of money to a female. Agents were able to identify the female and recovered a large amount of U.S. currency as well as two handguns from the female that belonged to BRYANT.

53. At **SUBJECT PROPERTY A2**, ISOM was arrested. During the search of the residence, agents seized approximately 1.5 kilograms of suspected cocaine, US currency and a 9mm Glock handgun.

54. At **SUBJECT PROPERTY A3**, JACKSON was arrested. During a search of the residence, agents seized approximately 2.75 kilograms of suspected cocaine and US currency.

55. At **SUBJECT PROPERTY A4**, TOQUILLA was arrested. During a search of the residence, agents seized approximately 22 kilograms of suspected cocaine and US currency.

56. At **SUBJECT PROPERTY A5**, GRAHAM was arrested. During a search of the residence, agents seized approximately 19 kilograms of suspected cocaine, five kilograms of suspected fentanyl and US currency.

57. At **SUBJECT PROPERTY A6**, SIMMONS was arrested. During a search of the

residence, agents seized approximately 141 grams of cocaine, 28 grams of crack cocaine and a SCCY 9mm handgun.

58. At **SUBJECT PROPERTY A7**, FLORES was arrested. During a search of the residence, agents seized approximately 1 kilogram of cocaine and US currency.

59. BOJORQUEZ was arrested by DEA in Milwaukee, WI. During a search of BOJORQUEZ' *AKA JOSE Daniel ZAZUETA- HERNANDEZ CWW* residence, agents seized approximately one kilogram of suspected fentanyl, two weapons and US currency.

60. Based upon the above, your affiant believes probable cause exists that the above named individuals have violated 21 U.S.C. 846, Conspiracy to Possess with the Intent to Distribute more than five kilograms of cocaine and 400 grams of fentanyl.

### REQUEST TO SEAL

61. Further, affiant requests that the Court order that all papers in support of this complaint, including the affidavit, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation and/or unnecessarily place individuals in harm.

Charles W. Whitford
Task Force Agent
Drug Enforcement Administration

Sworn before me, this 24th day
of October, 2019.

19

HON. KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE